IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action Number: 07-cv-02670-WYD-BNB

DR. MERVYN JACOBSON, a Citizen of Australia

     Plaintiff,

XY, INC. a Colorado corporation, and
TODD COX, an individual residing within the State of Colorado,

     Defendants.

---

FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING DECLARATORY JUDGMENT

---

     THIS MATTER came before the Court on a jury trial held the week of September 21, 2009.  As an initial matter, I note that prior to trial, the only claims remaining in the case were (1) Plaintiff Dr. Mervyn Jacobson's ("Dr. Jacobson's") fraud claim against Defendant Todd Cox; (2) Defendant Todd Cox's fraud counterclaim against Dr. Jacobson; and (3) Defendant Cox's cross-claim for declaratory judgment against Defendant XY, Inc. ("XY") concerning ownership of the Mulesing Project technology. The parties agreed that the jury would decided the fraud claims, and that the Court would then resolve the declaratory judgment claim.

     After considering the testimony of the witnesses, the credibility of the witnesses, the exhibits submitted, the arguments of counsel, and the parties' proposed findings of fact and conclusions of law, I now enter the following Findings of Fact and Conclusions of Law, which are relevant to resolving the issue of ownership of the Mulesing Project technology.

I. FINDINGS OF FACT

1.     XY is a Colorado corporation having a principal place of business at 1108 North Lemay Avenue, Fort Collins, Colorado 80524.

2.     The business of XY includes technologies utilized in the field of animal husbandry, including high speed cell sorting and "sex selection," a technology used to control the sex of offspring in livestock.

3.     Dr. Jacobson was CEO and Chairman of the Board of XY from XY's inception until he sold his interests in XY in the Spring of 2007.

4.     The XY culture has always been one of scientific research, and development of new and improved technologies at XY was part of its normal business.

5.     If an XY employee's idea was deemed meritorious, XY's patent attorneys began the process of research, drafting of documents, and completing various patent filings in relation to that idea.

6.     During this process, the patent attorneys would produce documents to be signed by the XY employee that would transfer ownership of the employee's invention or idea to XY.

7.     The process of inventing and assigning those inventions to XY is a standard process, with everyone doing virtually the same thing.

8.     Defendant Cox is a former employee of XY, working there from August of 2001 to approximately August or September of 2006.

9.     Defendant Cox did not know Dr. Jacobson or anyone else connected with XY prior to the time he applied for the job with XY.

10.    Defendant Cox was a technical employee and his job included a laboratory function.  Specifically, he was hired to work on the flow cytometer.

11.    During Defendant Cox's tenure at XY he reported to Dr. Jacobson and later to John Schenk, the laboratory manager.

12.    The initial idea for the technology at the core of this lawsuit (the "Mulesing Project" or the "Mulesing Project technology") arose while Defendant Cox was on an XY business trip to Australia in November of 2004.

13.    Upon his return from Australia, Defendant Cox promptly shared his idea with Dr. Jacobson in Dr. Jacobson's XY offices.

14.    At that first meeting, Dr. Jacobson told Defendant Cox that development of the Mulesing Project technology would be a "Mervyn/Todd" project or a "Todd/Mervyn" project.  Defendant Cox understood this statement to mean that development of the Mulesing Project technology would not be an XY project.

15.    At that meeting, Dr. Jacobson and Defendant Cox also discussed a partnership with respect to development of the Mulesing Project technology, and applying for a patent.

16.    After discussing the initial idea for the Mulesing Project, Dr. Jacobson instructed Defendant Cox to further develop the idea, and appointed Defendant Cox the XY "point man" for the project.

17.    The Jury found, via Special Verdict Questions, that Defendant Cox's job duties (at XY) did not include the responsibility for inventing, or for developing an alternative to the Mulesing procedure.

18.     Prior to the filing of any patent application relating to the Mulesing Project, Dr. Jacobson informed Defendant Cox that the patent application would be filed on behalf of XY.

19.     In February 2005, XY's patent attorney provided Defendant Cox with a document entitled "Assignment of Patent Rights" (the "2005 Assignment").  The 2005 Assignment stated that Defendant Cox, as Assignor, would assign all right, title and interest in the Mulesing Project technology to XY in exchange for ten dollars or "other good and valuable consideration, receipt of which is hereby acknowledged."

20.     Defendant Cox typed into his own computer the entire text of the 2005 Assignment of the Mulesing Project technology.

21.     After typing the text of the 2005 Assignment on his computer, Defendant Cox altered the text of the 2005 Assignment to reflect solely cash consideration in the amount of $100,000.

22.     The text of the 2005 Assignment sent from the Santangelo Law Offices to Defendant Cox (Exh. 11) is identical in all respects to the text of the 2005 Assignment as altered by Defendant Cox (Exh. 12) except for the consideration expressed therein.

23.     Defendant Cox did not disclose nor provide a copy of the altered 2005 Assignment to XY, Dr. Jacobson, or XY's legal counsel.

24.     Defendant Cox returned only the executed signature page of the 2005 Assignment of the Mulesing Project technology to XY's counsel.

25.     The signature pages to the 2005 Assignment as sent to Defendant Cox in February of 2005 and the 2005 Assignment as altered by Defendant Cox appear to be

the same.

26.     Defendant Cox intentionally withheld from Dr. Jacobson, XY and XY's legal counsel the fact that he altered the amount of cash consideration cited in the 2005 Assignment of the Mulesing Project technology forwarded to him by XY's counsel.

27.     The 2005 Assignment was filed with the United States Patent And Trademark Office on February 25, 2005 in conjunction with application number 60/565,837.

28.     In February of 2006, Defendant Cox executed an additional assignment to XY relating to the Mulesing Project technology (the "2006 Assignment").  The 2006 Assignment provided that Defendant Cox, as Assignor, would assign all right, title and interest in the Mulesing Project technology to XY in exchange for ten dollars or "other good and valuable consideration, receipt of which is hereby acknowledged."

29.     Defendant Cox typed into his own computer the entire text of the 2006 Assignment of the Mulesing Project technology.

30.     At some point after typing the text of the 2006 Assignment on his computer, Defendant Cox altered the text of the 2006 Assignment of the Mulesing Project technology he had received to reflect solely cash consideration of $500,000.

31.     The text of the 2006 Assignment sent from the Santangelo Law Offices to Defendant Cox (Exh. 16) is identical in all respects to the text of the 2006 Assignment as altered by Defendant Cox (Exh. 15) except for the consideration expressed therein.

32.     Defendant Cox provided only the executed signature page of the 2006 Assignment of the Mulesing Project technology to XY's counsel.

33.     As Defendant Cox was aware would be done, the 2006 Assignment was filed

with the United States Patent and Trademark Office.

34.     Defendant Cox did not disclose nor provide a copy of the altered 2006 Assignment of the Mulesing Project technology to XY, Dr. Jacobson, or XY's legal counsel until August of 2007.

35.     XY relied on Defendant Cox's execution of each of the 2005 and 2006 Assignments of the Mulesing Project technology in its pursuit of protection through the patent process in relation to the technology.

36.     XY was sold to new owners in May of 2007.

37.     Defendant Cox voluntarily terminated his employment with XY in September 2006.

38.     Dr. Jacobson retained no interest in XY after the May 2007 sale of XY.

39.     Defendant Cox testified that until sometime in or around August 2007, he expected he and Dr. Jacobson would own the Mulesing Project technology jointly, and that the two would each have some unknown percentage ownership in the technology.

40.     Defendant Cox never asserted any claim of ownership in the Mulesing Project technology or entitlement to any money in relation to the technology during the course of his employment.

41.     During the course of his employment with XY and at the time he left his employment with XY in August or September of 2006, Defendant Cox never complained that he was required to assign inventions to XY, never asserted that the 2005 or 2006 Assignments were invalid, that he was owed money in relation to his assignment of the technology, or that he did not want to sign the 2005 and 2006 Assignments.

42.     Defendant Cox made no attempt to rescind the assignments prior to his request that the Court declare the assignments rescinded.

43.     Defendant Cox first asserted his right to ownership in the Mulesing Project technology sometime on or around August 2007, after Dr. Jacobson informed him that he would did not intend that he and Defendant Cox would jointly own the Mulesing Project technology.

44.     The jury found that Dr. Jacobson had proven his claim of fraud by deceit against Mr. Cox by a preponderance of the evidence and awarded Dr. Jacobson $5,000.00 in damages.

45.     The jury further found that Mr. Cox had prove his claim of fraud by deceit against Dr. Jacobson by a preponderance of the evidence and awarded Mr. Cox $85,000.00 in damages.

46.     The Jury further found that Dr. Jacobson had not proven his affirmative defenses of waiver or laches.

## II. CONCLUSIONS OF LAW - DECLARATORY JUDGMENT

As noted above, the only remaining issue for the Court to resolve concerns ownership of the Mulesing Project technology.  XY asserts that the Mulesing Project technology has always been owned exclusively by XY, while Defendant Cox asserts that he is the true owner of the Mulesing technology.  Defendant Cox further seeks a declaration that the 2005 and 2006 Assignments are invalid because there was no "meeting of the minds" or contract formation, because the Assignments were induced by fraud, and because there was no consideration paid for the Assignments.  Defendant

Cox further contends that the Assignments, if valid, are nevertheless unenforceable because the terms of the Assignments are unconscionable and should not be enforced pursuant to C.R.S. § 4-2-302(1).

      A.    WHETHER DEFENDANT COX WAS REQUIRED TO ASSIGN THE MUSELING PROJECT TECHNOLOGY.

1.     "Generally, an invention is the property of the inventor who conceived, developed, and perfected it.  Hence, the mere fact that the inventor was employed by another at the time of the invention does not mean that that inventor is required to assign the patent rights to the employer."  *Scott System, Inc. v. Scott*, 996 P.2d 775, 778 (Colo. App. 2000).  However, an employee hired to invent is obliged to assign to the employer any patents granted to him which pertain to his employment. *See Solomons v. United States*, 137 U.S. 342, 346 (1890).

2.     "If an employee's job duties include the responsibility for inventing or for solving a particular problem that requires invention, any invention created by that employee during the performance of those responsibilities belongs to the employer." *Scott System*, 996 P.2d at 778.

3.     Here, the jury found that Defendant Cox's job duties did not include the responsibility for inventing and, more specifically, that his job duties did not include the responsibility for developing an alternative to the Mulesing procedure.  I will not disturb the jury's findings on these points.

4.     I conclude that Defendant Cox was not obligated to assign all inventions to XY, nor was he obligated to assign his ownership rights in the Mulesing Project technology

under the legal doctrines discussed above.  This conclusion notwithstanding, I must

nevertheless address XY's ownership rights based on the 2005 and 2006 Assignments.

      B.      FEBRUARY 2005 AND FEBRUARY 2006 ASSIGNMENTS.

5.      Defendant Cox asserts that the 2005 and 2006 Assignments are invalid because

there was no "meeting of the minds" with respect to the Assignments because he

secretly altered the amount of consideration reflected in the Assignments before

returning the signed signature pages to XY's legal counsel.

6.      In order to form a contract the parties must agree upon its essential terms.

*I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986).  Proof that

there is a "meeting of the minds" with respect to the essential terms of an agreement is

shown by demonstrating the parties' "manifestations of mutual assent" with respect to

the agreement.  *I.M.A., Inc.*, 713 P.2d at 888.  As a leading treatise states:  "In the

formation of contracts . . . it was long ago settled that secret, subjective intent is

immaterial, so that mutual assent is to be judged only by overt acts and words rather

than by the hidden, subjective or secret intention of the parties."  1 Williston on

Contracts § 4:1 (4th ed. updated 2007); *see also City and County of Denver v. Adolph

Coors Co.*, 813 F. Supp. 1476, 1479-80 (D. Colo. 1993) (finding that plaintiffs' secret

intent was immaterial and rejecting plaintiffs' contention that there was no meeting of

the minds).

7.      Here, the fact that Defendant Cox secretly altered the terms of the 2005 and

2006 Assignments to reflect a different amount of consideration, and chose to reveal

these secret alterations years later is irrelevant to the issue of contract formation.

Whether or not Defendant Cox subjectively agreed to the terms of the 2005 and 2006 Assignments as drafted by XY, Defendant Cox objectively manifested his assent to the terms of the 2005 and 2006 Assignments when he returned the executed signature pages of those documents to XY's counsel.

8.      Defendant Cox's contention that he "never signed" the actual 2005 and 2005 Assignments because he "retyped" them into his computer is also irrelevant because it is undisputed that the signature pages he returned were identical to the signature pages provided to him by XY's counsel.  I find that Defendant Cox's overt acts manifested his assent to the 2005 and 2006 Assignments and, therefore, I reject his contention that there was no meeting of the minds.

9.      Defendant Cox also contends that the Assignments were induced by fraud.  In connection with his fraud claim against Dr. Jacobson, the jury specifically found that Dr. Jacobson had made false representations to Defendant Cox regarding the Assignments.  In order to find Dr. Jacobson guilty of fraud, the jury had to find that Dr. Jacobson made false representations of material fact with respect to the Assignments, at the time the representations were made Dr. Jacobson knew they were false or was aware that he did not know whether the representations were true or false, that Defendant Cox justifiably relied on the representations, and that this reliance caused damages.

10.     Consistent with the jury's findings, I conclude that at the time he executed the Assignments, Defendant Cox justifiably relied on Dr. Jacobson's material representations that development of the Museling Project technology would be

"Todd/Mervyn thing", as opposed to a project Defendant Cox would undertake as an employee of XY.  I note that Dr. Jacobson was CEO and Chairman of the Board of XY at the time he made these representations.  I also conclude that absent Dr. Jacobson's representations, Defendant Cox would not have executed the Assignments.

11.      A party who has been fraudulently induced to enter a contract may either rescind the contract or affirm the contract and recover in tort for the damages caused by the fraudulent act.  *Trimble v. City & County of Denver*, 697 P.2d 716, 723 (Colo. 1993).  By pursuing a Declaratory Judgment claim for ownership of the Museling Project technology, it is clear that Defendant Cox seeks rescission of the Assignments.  I conclude that Defendant Cox is entitled to rescind the 2005 and 2006 Assignments with XY based on Dr. Jacobson fraudulent representations.

12.      While the general rule is that a party seeking to rescind a contract must return the opposite party to the position in which he was prior to entering the contract, this is not a technical rule, but an equitable one.  *Smith v. Huber*, 666 P.2d 1122 at 1124 (Colo. App. 1983).  "The standard used is 'substantial restoration of the status quo.'" *Smith*, 666 P.2d at 1124 (quoting *Bankers Trust Co. v. Hall*, 183 P.2d 986 (1947)). In this case, substantial restoration of the status quo does not require that Defendant Cox return or offer to return the ten-dollar consideration recited in the Assignments, or money expended by XY in its purchase of the laser and lambs used to conduct testing of the Museling Project technology, or the money expended by XY in legal fees in relation to the filing of patent applications.  Moreover, because Defendant Cox was not required, as part of his job duties, to execute the Assignments, I find no merit to XY's

contention that he should return to XY the five years of salary and benefits he was paid during his employment with XY.

13.     In addition, I reject XY's assertion that this conclusion results in a "double recovery" for Defendant Cox.  Defendant Cox could not seek both rescission of the Assignments with XY and recover tort damages from XY.  However, Dr. Jacobson is not a party to the Assignments, and Defendant Cox can seek damages from him, independent of his declaratory judgment claim against XY.

14.     Because I conclude that Defendant Cox is entitled to rescind the 2005 and 2006 Assignments, I need not address his contentions that the Assignments are unconscionable.

          C.     AFFIRMATIVE DEFENSES

15.     Finally, I reject XY's contention that Defendant Cox should not be permitted to rescind the 2005 and 2006 Assignments based on the doctrines of equitable estoppel, waive and laches.

16.     "A party asserting equitable estoppel must prove that (1) the party to be estopped knew the facts and intended that its representation be acted on so that the other party is justified in relying upon the represented facts; (2) the party asserting estoppel was ignorant of the actual facts; and (3) the party asserting estoppel reasonable relied, to its own detriment, on the other party's conduct or misrepresentation." *Calhan Chamber of Commerce v. Town of Calhan*, 166 P.3d 200, 204 (Colo. App. 2007).

17.     Here, Defendant Cox knew he returned what appeared to be the original signature pages of the Assignments to XY's counsel while he secretly created alternate

Assignments and concealed this fact from XY.  However, Defendant Cox expected that,

ultimately, he and Dr. Jacobson would own the Mulesing Project technology jointly, and

that the two would each have some unknown percentage ownership in the technology.

These expectations flowed from the representations Dr. Jacobson made to Defendant

Cox while Dr. Jacobson was CEO and Chairman of the Board of XY.  Under these

circumstances, I cannot find that XY was ignorant of the actual facts.  The jury found

that Dr. Jacobson made false representations to Defendant Cox with the knowledge that

they were false or with the knowledge that he did not know whether the representations

were true or false, and that Defendant Cox justifiably relied on the representations.

Thus, XY is not entitled to invoke the doctrine of equitable estoppel.

18.     "The doctrine of laches permits a court to deny a party equitable relief."  *Keller

Cattle Co. v. Allison*, 55 P.3d 257, 260 (Colo. App. 2002).  Laches arises from an

unconscionable delay in asserting one's rights that has prejudiced the party against

whom relief is sought.  *Superior Const. Co. v. Bentley*, 104 P.3d 331, 334 (Colo. App.

2004).  "The elements of laches are: (1) full knowledge of the facts; (2) unconscionable

delay in the assertion of an available remedy; and (3) intervening reliance by and

prejudice to another."  *Id.*  Here, Defendant Cox asserted his ownership rights shortly

after Dr. Jacobson informed him that the technology belonged to XY.  Therefore,

Defendant Cox did not exercise unreasonable delay in asserting his rights, and XY is

not entitled to invoke the equitable doctrine of laches.

19.     Similarly, "[w]aiver is the intentional relinquishment of a known right, and such a

contractual right will be waived if a party has acted inconsistently with it and if prejudice

would accrue to other parties." *Vanderbeek v. Vernon Corp.*, 25 P.3d 1242, 1248 (Colo. App. 2000).  Consistent with my conclusion that Defendant Cox did not unreasonably delay in asserting his rights to the Mulesing Project technology, I conclude that he did not act inconsistent with his belief that he had rights in the Mulesing Project technology, and XY is not entitled to invoke the equitable doctrine of waiver.

### III. ORDER

Based on the foregoing findings of fact and conclusions of law, it I hereby

ORDER and DECLARE that Defendant Todd Cox is the sole, exclusive, and rightful owner of the Mulesing Project technology and the corresponding intellectual property rights, including all related patent applications.  It is

FURTHER ORDERED that Defendant Todd Cox's request for a declaration that he is the owner of the Mulesing Project technology and corresponding intellectual property rights is **GRANTED**, and Defendant XY, Inc.'s request for a declaration that it is the owner of the Mulesing Project technology and corresponding intellectual property rights is **DENIED**.  It is

FURTHER ORDERED, pursuant to the parties' Stipulated Motion for the Parties to be Provided with Ten (10) Days Prior Notice to the Courts Anticipated Entry of a Final Judgment, that Judgment shall enter in favor of Defendant Todd Cox on his claim for declaratory judgment <u>no sooner</u> than (10) days from the date of entry of this Order.

Dated:  November 20, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge